JOHN S. METCALF COMPANY, LIMITED, Respondent, *v.* FRANCIS
RANDOLPH MAYER and Others, Appellants, Impleaded with
Others, Defendants.   (Action No. 1.)

First Department, July 6, 1925.

Contracts — action to recover under cost plus contract for construction
  work in France — plaintiff's proof shows no balance due — all trans-
  actions were on basis of francs — recovery must be in United States
  money at rate of exchange at time of rendition of judgment — right to
  interest must be determined by law of this State in absence of allegation
  and proof of French law — interest cannot be allowed from time of
  demand where demand includes items not collectible.

In an action to recover an alleged balance due under a contract for construction
  work in France, whereby the plaintiff was to be paid a percentage in addition

to the cost of construction, the evidence on behalf of plaintiff does not show that any balance is due.

Since all the transactions between the parties were on the basis of francs and since under the contract the payment of any amount due could have been made in francs prior to the commencement of the action, any recovery that the plaintiff may be entitled to must be in United States money at the rate of exchange at the time of the rendition of the judgment and not as of the time when the work was completed.

The right of plaintiff to collect interest on the amount alleged to be due must be determined by the law of this State in the absence of any allegation or proof of the French law. The plaintiff is not entitled to any interest from the time it demanded payment if it included within the demand for payment any items not collectible.

APPEAL by the defendants, Francis Randolph Mayer and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 8th day of May, 1924, upon the verdict of a jury, and also from an order entered in said clerk's office on the 5th day of May, 1924, denying said defendants' motion for a new trial made upon the minutes.

*Patterson, Eagle, Greenough & Day* [*Carroll G. Walter* of counsel; *Edward J. Patterson* with him on the brief], for the appellants.

*Andrew A. Fraser* [*Joseph A. Burdeau* with him on the brief], for the respondent.

FINCH, J.:

The action was brought to recover $10,243.04 claimed to be the balance due under a contract dated May 6, 1915,' between the plaintiff and Mayer & Lage, Inc., whereby the plaintiff undertook to supply equipment for, and take charge of, the handling of grain in France for a consideration of cost plus a commission of fifteen per cent. Concededly the parties proceeded under the contract, the plaintiff installing grain elevators and handling grain, rendering statements of expenditures to said defendant, and the defendant making payments on account of such statements received. On April 22, 1916, the plaintiff ceased work under the contract because of the fact that Mayer & Lage, Inc., advised the plaintiff that their business had been taken over by the France and Canada Steamship Company, and the latter informed the plaintiff that there was no contract between it and the plaintiff. No question of breach of contract is involved, however, the plaintiff claiming a balance of $8,906.99 due on account of disbursements made and a commission of fifteen per cent upon said amount.

The jury returned a verdict in the amount of 84,390.38 francs, which the trial court found was excessive, but afforded the parties an opportunity to terminate the litigation by reducing the verdict

to an amount which it deemed the defendant had conceded was due, saying: " The present claims of the respective parties are so conflicting and the proofs in support of such claims are so unsatisfactory and inconclusive that I am of the opinion that the best solution is to take the amount mutually arrived at by the parties themselves before this litigation began." The trial court, therefore, set the verdict aside and granted a new trial unless the plaintiff consented to a reduction of the verdict to 58,750.77 francs.  We agree entirely with the characterization of the learned trial court as to the claims and the proof of the parties.

We disagree with the trial court as to finding in this record a basis for allowing any recovery. The letters between the parties relied on do not sustain the conclusion that there was at any time a mutual agreement as to an amount due. On the contrary, these letters, which in part are set forth below, show that any amount due was undetermined and the subject of negotiation. The defendant, in its letter of November 4, 1916, after calling to plaintiff's attention that certain credits had been omitted from statements rendered, stated: " This leaves owing to you, according to your own showing, Fcs. 13,750.77 — a figure we shall doubtless be able to agree when we get your bills 16 and 17 and the other information you have asked from London." As indicated in the following letter the information above referred to was information which the defendant had requested the plaintiff to obtain to enable the defendant to check the bills.

Defendant's letter of November 20, 1916, reads as follows:

" Mr. A. V. ROUTLEDGE, Sec'y.,
　　　" JOHN S. METCALF Co., LIMITED,
　　　　　" 54 St. Francois Xavier Street,
　　　　　　　" Montreal, Canada.

" DEAR SIR.— We have your favor of the 9th instant, and note your explanation of the 45,000 Fcs. item on your statement. We have taken this to represent the £1,500 sent to London from New York and the 41,400 Fcs. for a further £1,500 paid from St. Nazaire. However, we perceive we were in error, and, as soon as you can give us the other information for which you have cabled London, no doubt we can quickly arrive at a final settlement with you. The delay is now likely to be so short that we would prefer not making another payment on account.

　　　　　　　" Yours very truly,
　　　　　　　　　" S. H. McINTOSH,
　　　　　　　　　　　"*Treasurer.*"

39

It is to be noted that the defendant in these letters was very careful to negative any implication that any amount would be due. It further appears that on December 22, 1916, the plaintiff wrote the defendant as follows:

" On the statement of account to March 1st, 1916, which was sent you, you will find the following four items  *  *  *  totaling Francs 27,904.83.

" This was material ordered by you from the London office, but delivery and payment for which was not made.

" Under the circumstances our London office has disposed of same, and there will therefore be a credit coming to you of the above mentioned amount.

" We have received from London a full detailed statement with copies of all accounts relating to the work done in France.   The writer is checking same over, and when it is completed will advise you regarding it."

And on January 31, 1917, the plaintiff wrote the defendant as follows: " On December 22, 1916, we advised you that we had received from London full detailed statements with copies of all accounts relating to the work done at St. Nazaire and Nantes, and also in connection with the Cement Gun demonstration made under agreement signed with Captain Mayer on November 19th, 1915.

" The writer has gone carefully into both statements and finds that on the St. Nazaire and Nantes contracts there is a balance due of 58,818 francs, whilst on the Cement Gun demonstration no payment has ever been made and there is 13,678.96 francs owing, making a grand total of 72,496.96 francs, which you must admit is quite a considerable sum of money to have outstanding for the length of time that this has been.  *  *  *

" We are also enclosing for your information copy of letter received from the London office in connection with these accounts, more especially dealing with the credit of 10,000 francs which you claimed some time ago in one of your letters.

" Will you be good enough to make an appointment with the writer at your office so that any further information which you may require can be given, as we very much desire to obtain payment at the earliest possible moment.

" Trusting that you will find time to look into these accounts within the next few days and advise when it will be convenient to meet the writer, we are,  *  *  *."

From the foregoing it appears that the tenor of the correspondence was that whether any amount was due was at all times in dispute; that adjustments and corrections were being made from time to

time, and that it was the understanding of the parties that any final amount due was subject to determination at a conference to be had between the parties at some time after January 31, 1917, the date of the letter last quoted.

The plaintiff's action, moreover, is not brought upon an account stated, but upon the items making up the account, and it was, therefore, incumbent upon the plaintiff to prove said items. This the plaintiff attempted to do by showing that certain statements had been rendered to Mayer & Lage, Inc., as provided by the contract, and retained by them. These statements consist of a series of bills, which may be divided into two classes; those first rendered, numbered 1 to 17, which were made up during the progress of the work and presumably contemporaneously with the expenditures they purport to represent, and those rendered after the plaintiff ceased working under the contract, numbered 18 to 26, covering items not included in the bills first rendered, making certain corrections in the rate of exchange in connection with items previously billed, and covering expenses subsequent to the cessation of the work. The bills of the first class aggregate 582,870.57 francs; those of the second class (excluding No. 22, subsequently canceled), 50,361.13 francs. The proof adduced by the plaintiff in regard to the actual disbursements of the items included in the bills related to the first series of bills, namely, those rendered during the performance of the work. In this connection the plaintiff's witness Durham testified as follows: " Q. Do you know of your own knowledge that the work which is reflected in these bills was actually done in connection with this contract? A. Yes. Q. You were there and personally supervised it? A. I was not there all of the time, I was there part of the time. Q. And you checked up from your records, and your men, and your superintendent, all this work up until July? A. Yes." Apparently this testimony covered the period up to July 3, 1915, and would include the first four bills rendered, namely, those numbered 1 to 4. Thereafter the plaintiff's witness Clark took up the duties of Durham, and he testified that he was in constant touch with the superintendent of the work, rendered bills every week accompanied by the original vouchers, and checked up each bill with the superintendent before it went out. His testimony covered all but one of the remainder of the bills first rendered, namely, Nos. 6 to 17.

Assuming the aforesaid testimony to be proof of the expenditures included in the said bills, there is nevertheless lacking any proof in connection with bill No. 5 of said first series, amounting to 64,771.20 francs.

As to the bills rendered after the cessation of work under the

contract, there is no proof whatsoever of the actual disbursement by plaintiff of the moneys involved therein.

The credits to which the defendants concededly are entitled because of payments, etc., prior to the time when the plaintiff stopped work, aggregate 574,413.70 francs. Deducting this amount from the aggregate of the bills rendered during the progress of the work, leaves a balance of 8,456.87 francs. This amount is further reduced by 3,059.15 francs, representing a commission on amounts paid direct by Mayer & Lage, Inc., to which the court expressly ruled the plaintiff was not entitled, and apparently also by 1,500 francs charged as a commission on 10,000 francs advanced to Mayer & Lage, Inc., and subsequently returned, which apparently was a loan and not an item of disbursements.

The balance, therefore, *prima facie* due in connection with bills 1 to 17 is but 3,897.72 francs, and since included in the aggregate amount of said bills is the sum of 64,771.20 francs represented by bill No. 5, concerning which there was no proof adduced, the plaintiff has failed to prove that there is any amount due.

The parties also are in dispute concerning the time when the prevailing rate of exchange should be taken in transmuting any amount of francs recovered into American currency and the right to interest on any judgment recovered. Since there must be a new trial, these questions will now be considered.

Considering the question of the date of the application of the rate of exchange, the plaintiff contends the rate should be that which prevailed at the time when work stopped under the contract, namely, April 22, 1916. It would seem, however, that the time should be the date of the rendition of the judgment. The question primarily is, what was the intention of the parties as shown by their contract and by their acts of performance thereunder. The controlling fact in connection with the contract is that the contract was made in France and was to be performed in France. In addition, the plaintiff by its own conduct has construed the contract as requiring payments in francs. Whenever the plaintiff made a disbursement in currency other than francs, it translated the amount thereof into francs and billed the defendant Mayer & Lage, Inc., in the latter currency, and received payments on that basis. This shows the interpretation which the plaintiff put upon the contract, and it is now too late for the plaintiff to seek to place another interpretation upon it, namely, that the rendition of the bills in francs was only for convenience, and that since the francs have declined in value, the plaintiff is entitled to dollars as of the date when it is claimed the amount demanded became payable.

In addition to what has been said, there are two other considera-

tions which would seem to show that the position of the plaintiff is untenable. In the first instance, the great bulk of the expenditures were made by the plaintiff in francs, and certainly as to these the plaintiff could not claim that it was entitled to have currency of another country measure the value of the currency which it had expended. Also, if the plaintiff had sued in France, it clearly would only be entitled to a judgment for an amount of francs, and the plaintiff by suing in another country cannot obtain the advantage of adopting a rate of exchange at a time other than the date of the rendition of the judgment. The plaintiff is entitled to a judgment for francs in accordance with its bills rendered and its demand for payment. The only reason for translating the amount of francs into dollars is because the judgment must be rendered in the money of the forum; hence the date of the application of the rate of exchange should be the time of the rendition of the judgment. All the aforesaid facts bring the case within the rule stated in *Sirie* v. *Godfrey* (196 App. Div. 529). There the defendant had purchased goods in France for a certain amount of francs, and, as the court pointed out, the defendant could have paid this bill at any time up to the rendition of the judgment in francs. So, too, in the case at bar, when the plaintiff rendered bills in francs to Mayer & Lage, Inc., it gave them the right to pay these bills in francs at any time up to the rendition of the judgment. In *Sirie* v. *Godfrey (supra)* the court, by Mr. Justice MERRELL, said: " I think the court correctly decided that the contract between the parties was a simple one of sale of merchandise to be paid for by the defendant in French francs. I am further of the opinion that, even assuming that the defendant failed to pay said indebtedness when the same became due, nevertheless, the plaintiff cannot recover upon the trial the American equivalent of 10,450 francs, the purchase price of said mechandise, at the rate of exchange at the time said indebtedness was payable, but that at most the plaintiff was entitled to recover in American money the equivalent of the French francs stipulated in the contract at the rate of exchange prevailing at the time of the rendition of judgment. This was a French contract for the sale in France of French goods for which the purchaser agreed to pay in French francs at Paris, France. At any time before suit was brought the defendant could have tendered the plaintiff at Paris, France, the 10,450 francs in full payment of her claim, and plaintiff would have been compelled to accept the same. Indeed, as late as October 4, 1919, but seven months prior to the commencement of the action, in her letter to defendant, the plaintiff claimed no more than payment of the 10,450 francs in discharge of defendant's indebtedness to her. The purchase

price of the goods in question was not payable in American dollars, nor was it payable in German marks. It was payable in French francs, and by merely bringing action in this jurisdiction, the plaintiff, I apprehend, acquired no right to a more favorable judgment than she could have obtained had action been brought in France."

Reliance is placed by the plaintiff upon the case of *Hoppe v. Russo-Asiatic Bank* (235 N. Y. 37). There, however, the court was considering a case where the defendant had received money in France which it had agreed to transmit to or place to the credit of the plaintiff's assignor in England. Upon a breach of the contract by the defendant, therefore, the plaintiff's damage was fixed by the value of the money at the time and place at which the defendant had agreed to deliver the same. Another such case is *Gross v. Mendel* (171 App. Div. 237), cited by the Court of Appeals in *Hoppe v. Russo-Asiatic Bank* (*supra*). As pointed out, in the case at bar the obligation was to pay francs in France on account of a contract entered into and performed there and payment in francs was demanded by the bills rendered. The distinction between the case at bar and the *Hoppe* and *Gross Cases* (*supra*) is pointed out in the case of *Sirie v. Godfrey* (*supra*) where the court said: " In other words, the procedure involved in the *Mendel* case seems to me no less than a transmission of money from this country to Germany, accomplished through the instrumentality of the said bills of exchange, and when said bills became due, the defendants not having the marks in readiness at Leipzig to meet them, it was incumbent upon the plaintiffs to procure the necessary marks to meet said bills of exchange which they had drawn, and they were allowed to recover a sum of money sufficient to procure the same upon the dates when they fell due. The situation in the case at bar is entirely different. This is not the exchange of money, but the payment for goods purchased and sold through a medium of exchange, namely, French francs, specified in the contract."

It follows that the time of the application of the rate of exchange is at the time of the rendition of the judgment.

Coming now to a consideration of the question of interest: In so far as the question of interest is concerned, the law of the State of New York will be applicable in the absence of proof of the law of France upon the subject. Either side who wishes to claim the benefit of the law of France must allege and prove such law. As was said in *Monroe v. Douglass* (5 N. Y. 447, 452): " It is a well-settled rule, founded on reason and authority, that the *lex fori*, or, in other words, the laws of the country to whose courts a party

appeals for redress, furnish, in all cases, *prima facie*, the rule of decision; and if either party wishes the benefit of a different rule or law, as, for instance, the *lex domicilii; lex loci contractus;* or *lex loci rei sitæ;* he must aver and prove it."

Whether under the law of New York the plaintiff will be entitled to interest upon any amount recovered upon a retrial, cannot now be determined, since it will depend largely upon the facts adduced upon such trial. In so far as appears from the present record, the plaintiff was not entitled to interest. It appears that payments were made from time to time on account of statements rendered, that adjustments and corrections were made from time to time and that a final determination of any amount due was reserved for a conference between the parties. The parties were unable to agree upon the balance due long after the plaintiff ceased work under the contract, and even after a trial of the issues, that amount has not been established. Such amount as was awarded the plaintiff, moreover, was considerably less than the amount demanded. Under these circumstances the plaintiff was not entitled to interest on the amount recovered. As was said by McLAUGHLIN, J., in *Excelsior Terra Cotta Co.* v. *Harde* (90 App. Div. 4; affd., 181 N. Y. 11): "It cannot be that one can be subjected to a liability for interest which depends upon a proper demand because he does not accede to an improper demand. * * * The contract did not in express terms provide for interest, and a demand was, therefore, necessary to set interest running, and it is well settled that when such demand is necessary, it must be for the amount due, and if it includes any item not recoverable, the demand is illegal and interest cannot be allowed."

In the case at bar the record shows that there were included in the plaintiff's demand items to which it was not entitled.

Also, in Sutherland on Damages (Vol. 1 [4th ed.], p. 1106) it is said: " A demand of more than is due may well be treated as insufficient to put the debtor in default, for it not only does not tend to liquidate the claim but indicates that the plaintiff prevents both adjustment and payment or that the claim is intrinsically uncertain."

In *Faber* v. *City of New York* (222 N. Y. 255, 262) the court, by ANDREWS, J., said: " The question of the allowance of interest on unliquidated damages has been a difficult one. The rule on this subject has been in evolution. To-day, however, it may be said that if a claim for damages represents a pecuniary loss, which may be ascertained with reasonable certainty as of a fixed day, then interest is allowed from that day. The test is not whether the demand is liquidated. Was the plaintiff entitled to a certain sum? Should the defendant have paid it? Could the latter have deter-

mined what was due, either by computations alone or by computation in connection with established market values, or other generally, recognized standards? "

It follows that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellants to abide the event.

CLARKE, P. J., MERRELL and BURR, JJ., concur; MARTIN, J., concurs in result.

Judgment and order reversed and new trial ordered, with costs to the appellants to abide the event.