Van Voorhis, J.
This appeal is from an order confirming an arbitration award and denying a cross motion to vacate or modify it. The controversy arises out of a contract for the sale of 250 bags of a commodity described as ‘ ‘ Ordinary Bysaki Seedlac, basis 5% insoluble matter ” to be shipped from Calcutta, India, to New York City. The contract price was forty-nine cents per pound, and the terms net cash against documents. The purchaser is appellant United Shellac Corporation of Newark, New Jersey, and the seller is respondent A. M. Jordan Ltd., of Calcutta, India. The contract was made in New York, having been executed for Jordan by its agent Alfred Kramer & Co. Inc.
In confirming Jordan’s acceptance of the contract of sale, Kramer wrote to United a letter containing the following-clause, which was agreed to by United:
“ In connection with this contract, it has been arranged between yourselves and Mr. Jordan that you will pay for those 250 bags of Seedlac in Lbs. Sterling at the rate of $4.02 to the National Bank of India Ltd., London to be remitted to their Calcutta office, provided this transaction will not be prohibited by the Exchange Control Authorities at either Calcutta or London. Otherwise the amount of the invoice shall be payable to ourselves here in either Dollars or American Sterling* against documents.
*150 Kindly sign the attached copy of this letter for our own files, and oblige,
Yours very truly,
Alfred Kramer & Co. Imu.
A. Kramer
President
AK-.ES
Enc.
Accepted
United Shellac Corporation Harry Lipman Pres.
* American sterling is English lb. sterling bought in United States.”
Jordan did not ship the goods during the first half of January, 1949, which was the time stated in the agreement, but shipped them twelve days later on January 27, 1949. United contended that it was relieved from the contract by reason of such delay, and likewise that the quality of the seedlac was defective in respect of the percentage of insoluble matter. Jordan asserted that the delay resulted from its endeavoring to comply with United’s request that arrangement be made for payment in pounds sterling through London. United refused to accept the merchandise, and Jordan demanded arbitration under a clause in the contract. The arbitrators made an award which contained the following statement:
“ We find that both parties to the contract were at fault, and in view of the circumstances and facts existing at the time this contract was made and of the acts and conduct of the parties since then, we decide that the two hundred and fifty bags of seedlac involved be accepted by United Shellac Corporation and that the latter shall pay therefor the price specified in the contract, less two and one half cents per pound; all charges accrued since arrival of the goods to be equally divided between and borne by the parties.
“ This award has no relation to the question, if any, of penalties for quality or insolubilities; such question not being presently before us.”
United appealed to this court from an order confirming this award and the judgment entered thereon against it in favor of Jordan for $18,303.78. Although the order and judgment directed recovery in this specific amount, no amount was *151 mentioned in the award. The arbitrators would have been deemed to have taken into account the claimed defect in quality of the merchandise arising from the presence of insoluble matter, except that the award stated expressly that this subject had not been considered. There was nothing to indicate whether the arbitrators had determined if the recovery was allowed to be paid in the dollar equivalent of pounds sterling as of any particular time, or at any particular rate of exchange.
This court held the award to have been incomplete and remitted the matter to the arbitrators ‘ ‘ to determine, in dollars and cents, the amount of the award in accordance with all the terms of the contract, including allowances for insoluble impurities and expenses, if any, and the provision with respect to payment in pounds. The difficulty here presented is there is on the face of the record an unexplained disparity between the award of the arbitrators and the amount of the judgment directed to be entered thereon.” (276 App. Div. 756.)
The third paragraph of the order of reversal directed “ that such determination in dollars and cents shall be made in accordance with the terms of the contract between the parties, including allowances for impurities and expenses, if any, and the provision with respect to payment in Pounds, if applicable.” Thereafter the arbitrators reconvened, held a new hearing, and rendered an award which recited the portion of the order above quoted, and concluded:
“We determine that the amount payable by United Shellac Corporation to A. M. Jordan, Ltd. for said Seedlac as of April 28th, 1949, the date of our original award, was and is Eighteen Thousand One 83/100 ($18,001.83) Dollars, arrived at as follows:
250 bags of Seedlac (41,000 Lbs.) basis 5% insoluble matter, @ 46%$ (contract price 49$ minus 2%$ per lb. per arbitrators’ original award — 46%$) $19,065.00
Less, allowance of 4.86% for 2.93% of insoluble matter in excess of 5% contract base 1,117.21
$17,947.79
Plus, Customs entry 6.00
Plus, one-half of $96.08 paid for storage, labor and transfer charges to April 28, 1949 (date of original award) 48.04
Total
$18,001.83 ”
*152 Subjoined to this award was a statement clarifying the arbitrators’ determination with respect to interest and storage charges, and the following comment respecting the British exchange situation:
“ In determining the above amount of our award in Dollars and Cents, we have given consideration to all of the items and instructions contained in the order dated November 14th, 1949, of the Appellate Division of [the] Supreme Court for the First Judicial Department including the provisions with respect to payment in Pounds Sterling to such extent, if any, as the same is applicable * *
The present appeal is by United from this final award. The omissions in the previous award have been supplied. The amount (except interest and storage charges) is the same as stated in the previous order and judgment, but this time the amount has been determined by the arbitrators instead of being computed by the court. This award shows that the question of defects in quality by reason of insoluble matter has been taken into account, and likewise the clause in the contract with respect to pounds sterling.
The only objection raised by United to confirmation of the second award which merits discussion, relates to the clause respecting payment in dollars or American sterling. After the refusal by United to accept delivery from Jordan, which the arbitrators have determined was a default by United in the performance of the contract, the pound sterling was devalued by the British Government from $4.02 to $2.80 in American currency. United contends that, if the award were otherwise upheld, it “ should be permitted to liquidate the dollar amount of the award by delivering to Jordan sterling therefor at the rate of $4.02, which as already indicated, amounts to 4,464.62 lbs. sterling * * If valued at the present official rate of $2.80, the number of pouncls which would be required to liquidate the award would be 6,429. An arbitration award in this country, like the decision of a court, must direct payment in dollars, since “ the judgment must be rendered in the money of the forum ” (Metcalf Co. v. Mayer, 213 App. Div. 607, 613). The question, in such cases, ordinarily resolves itself into whether, in arriving at the amount to be awarded measured by the currency of another country, the foreign exchange is to be translated into American currency as of the date of the breach of contract or the day of the judgment. Where the suit in this country is based upon an obligation existing under foreign law, to be performed abroad, and *153 the jurisdiction of our courts arises merely from “the fact that the creditor happens to be able to catch his debtor here ” (Deutsche Bank v. Humphrey, 272 U. S. 517, 519), the amount of the judgment (or award)' is adjusted according to the exchange rate which prevails on the day of judgment (Richard v. American Union Bank, 241 N. Y. 163; Metcalf Co. v. Mayer, supra; Sirie v. Godfrey, 196 App. Div. 529; Deutsche Bank v. Humphrey, supra). On the other hand, if the contract is to be performed here, then the exchange rate to be applied is that which obtained at the time of default, when the contract was broken (Hicks v. Guinness, 269 U. S. 71; Hoppe v. RussoAsiatic Bank, 235 N. Y. 37, explained on the basis of this distinction in Richard v. American Union Bank, supra; 5 Willis-ton on Contracts [Rev. ed.], § 1410A).
It is contended by United on this appeal, citing Matter of Western Union Tel. Co. (Amer. Communications Assn.), (299 N. Y. 177); Matter of International Assn, of Machinists (Cutler-Hammer, Inc.) (297 N. Y. 519); Matter of General Elec. Co. (Elec., etc., Workers) (300 N. Y. 262) and similar decisions, that this contract, without ambiguity, entitles United to purchase presently depreciated English pounds sterling and credit them on the amount of the award at the rate of $4.02. From this it is argued that there is not room for an arbitrable dispute concerning the point. This conclusion is fallacious. Under the principle established in Hicks v. Guinness, Hoppe v. RussoAsiatic Bank and Richard v. American Union Bank (supra) where a contract is to be performed in this country the damages are to be measured by the value of the foreign currency in dollars as of the time when default occurred. In this instance, the official rate of exchange when default occurred was $4.02. It is undisputed that if United were obliged to buy pounds at their then official rate of $4.02 in order to liquidate this obligation, it would not affect materially the amount of its obligation as found by the arbitrators.
This contract was made in New York State, and in New York delivery of the merchandise and payment were to be made. The clause respecting payment in London for transmission to India became inoperative, by its terms, due to prohibition by exchange control regulations. United wrongfully refused to accept these goods, as the arbitrators have determined, several months before the devaluation of the British pound. Consequently, the arbitrators were within their province in determining, as they have done, that recovery should be granted in accordance with what the pound was officially worth in dollars *154 at the time when the breach occurred. This does not deny to United its contractual privilege of converting the purchase price into pounds; it simply means that under the established law upon this subject, the conversion privilege is confined to a time which would not benefit United.
These goods, it should be recalled, were not rejected by United by reason of the exchange medium in which payment was to be made. The pound had not yet been devalued, and it is admitted that this privilege of paying in American sterling amounted to little, if anything, when the merchandise was refused. It was refused on the ground of delay in shipment and that it was defective in quality.
Where the subject of dispute is arbitrable, as it is in this instance, the court will not stop to inquire concerning on what date the arbitrators found that the default occurred, nor the unofficial exchange rate on that date, whether the official or unofficial rate should control, whether the equivalent in English money at that time would have been greater or less than the dollar value found, nor whether the theory of recovery granted by the arbitrators was specific performance or damages or some combination of the two, such as is authorized now in actions by sections 148 and 149 of the Personal Property Law. The arbitrators are deemed to have considered all of these matters and found them in favor of respondent, nor is their award to be disturbed by reason of possible errors of law or fact, inasmuch as an arbitrable dispute existed which was in their province to determine. Within limits that have not been exceeded, they have power to mould the remedy to their conception of the justice of the case.
A narrower, but persuasive, consideration leads also to the conclusion that this phase of the controversy was arbitrable. The contract refers to the $4.02 rate of exchange as controlling in event that payment were to be made to the National Bank of India Ltd. at London for remittance to its Calcutta office. Such payment was not required to be made if prohibited by the exchange control authorities, and could not be made since it wafs thus prohibited. “ Otherwise,” continues the contract, “ the amount of the invoice shall be payable to ourselves here in either Dollars or American Sterling against documents. ’ ’ It is not stated that payment in American sterling at New York must be at the rate of $4.02. Even if the conversion privilege of dollars into American sterling were to be regarded as operative on the judgment day instead of the date of the breach of contract by United, it was still for the arbitrators to decide *155 whether the parties to the contract intended that sterling should be translated into dollars at the rate of $4.02 in event of payment in New York.
The order appealed from should be affirmed, with $20 costs and printing disbursements.
Peck, P. J., Dore, Callahan and Shientag, JJ., concur.
Order unanimously affirmed, with $20 costs and disbursements.