MARY PERUTZ, as Administratrix of the Estate of ARTHUR PERUTZ, Deceased, Appellant, v. BOHEMIAN DISCOUNT BANK IN LIQUIDATION, Respondent.

First Department, February 13, 1952.

*Lincoln Orens* for appellant.

*Philip F. Farley* of counsel (*Anna H. Isenschmid* with him on the brief; *Topken & Farley,* attorneys), for respondent.

DORE, J. Plaintiff, administratrix of the estate of her deceased husband, a former employee of a Czechoslovakian bank, the assets of which have been acquired and the liabilities assumed by defendant-respondent, a successor bank, appeals from judgment in defendant's favor dismissing the complaint after trial before the court without a jury.

All relevant facts were stipulated to by both parties in a written stipulation submitted to the trial court, and Doctor Paul Hartmann who testified as a qualified expert on Czechoslovakian law was, also by stipulation, called as a witness for both plaintiff and defendant; so that there are no disputed issues of fact or of law in this record.

Plaintiff's husband came to the United States in 1940, became an American citizen and resided here until his death on June 12,

1949. Under an agreement with defendant's predecessor bank, plaintiff concededly is entitled to a pension from the bank commencing in 1940. By a previous judgment consented to in November, 1942, the Supreme Court of this State granted plaintiff's intestate all sums due under the pension contract up to October 31, 1942. This action by the intestate's legal representative is for the amounts due and owing and concededly unpaid under the same contract from November, 1942, to date of trial. Before his death, plaintiff's intestate had attached in New York funds of defendant as successor bank.

The parties expressly stipulated that under a written contract, valid under Czechoslovakian law, and pursuant to the pension agreement entered into between defendant's predecessor and plaintiff's intestate, the employee " became entitled to " a pension of a stipulated amount per month commencing February 1, 1940. The judgment here appealed from is a final judgment on the merits in defendant's favor after trial. If this judgment in defendant's favor dismissing the complaint is affirmed, plaintiff is forever barred from judgment to which she is entitled by settled concepts of fairness and justice and also of law under the expert's testimony and decisions of our courts.

The issue is not whether failure to *pay* plaintiff in American dollars constitutes breach of the pension contract; the issue is whether plaintiff is entitled to *judgment* even though, before judgment, a license has not been secured.

At trial, Dr. Hartmann testified that under Czechoslovakian law the employee, even if he was a New York resident at the time the payments in question became due, could prosecute and obtain judgment against the bank, the employer, in an action in Czechoslovakia, and under such law the currency regulations of that country would be no defense or bar to *judgment* in such action " even though no license were obtained." He testified further as follows: " Q. Dr. Hartmann, would the currency regulations or laws of Czechoslovakia be a defense to such an action in Czechoslovakia, and bar a judgment in favor of the plaintiff under Czechoslovak law, even though no license were obtained from the Czechoslovak National Bank permitting payment by the employer to the employee? A. No. It is a settled practice of the Czechoslovak Supreme Court that the fact that no license was granted for a payment which, under the law of Czechoslovakia requires license, that such fact is no valid defense for an action for performance." He said that the Supreme Court was the highest court in Czechoslovakia. He further testified:

" The Court: What would that mean under the laws of Czechoslovakia, that this plaintiff would have no right to bring this action here unless he got permission from their consul here?

" The Witness: No, no, the question, as I understand it, referred to payment. But, there is no law preventing a person from bringing the action in any country."

He said the employee " could get judgment " in Czechoslovakia and by the same token he could bring an action in this country and " get judgment here." It was only when execution issues that a license from the National Bank is required. He added that the laws of Czechoslovakia prevent payment by a resident to a nonresident or by a resident " into a foreign country " except pursuant to a license from the National Bank. When asked the consequences of payment by a Czechoslovakian resident to a nonresident under the currency regulations without a license, he said the only effect would be possible criminal penalties.

In numerous cases in which a license was required under executive orders and regulations of executive departments of our own government, judgments have been entered although prior to judgment, no license had been obtained (*Singer* v. *Yokohama Specie Bank,* 293 N. Y. 542; *Banque Mellie Iran* v. *Yokohama Specie Bank,* 299 N. Y. 139). We should not give greater effect to currency regulations of a foreign government than we give to the regulations and executive orders of our own governments.

In *Cermak* v. *Bata Akciova Spolecnost* (80 N. Y. S. 2d 782, affd. 275 App. Div. 919) in an action to recover money attached by the plaintiffs in a New York bank and owed plaintiffs' assignors, the trial court held that even though no formal license had been procured to permit payment by defendant, a Czechoslovakian resident, to nonresidents as required by Czechoslovakian law and treasury regulations, plaintiffs should nevertheless obtain judgment.

The Supreme Court of this State has jurisdiction to determine this controversy between a resident and a foreign bank on a contract to be performed abroad; for in more extreme cases between citizens of foreign countries or sister States predicated upon contracts between nonresidents to be performed outside the State, it has been held that the courts of this State will entertain jurisdiction where the liability is recognized by the common law and is not violative of our public policy (*Hutchinson* v. *Ward,* 192 N. Y. 375; *Wedemann* v. *United States Trust*

*Co.,* 258 N. Y. 315, 317, 318; *Meyers* v. *Credit Lyonnais,* 259 N. Y. 399).

The judgment now sought of this court is an adjudication of liability of defendant to plaintiff. In addition to the uncontested testimony as to the foreign law in this case that the employee " could get judgment in Czechoslovakia " and also " get judgment here ", numerous and recent precedents fully support the conclusion that judgment adjudicating such liability may be obtained in our courts despite foreign treasury regulations.

In *Sabl* v. *Laenderbank Wien Aktiengesellschaft* (30 N. Y. S. 2d 608) it was held that currency and foreign exchange regulations promulgated by Germany and by France did not preclude the entry of a judgment for plaintiff in an action by a former employee of the Eastern Branch of a French bank brought for wrongful discharge. This court unanimously affirmed (266 App. Div. 832 [June, 1943]). In *Freund* v. *Laenderbank Wien Aktiengesellschaft* (N. Y. L. J., June 29, 1949, p. 2289, col. 5) in an action to recover damages for breach of contract of employment entered into and to be performed in Austria, the defense of the German foreign exchange regulations prohibiting payment outside of Austria was overruled. This court unanimously affirmed (277 App. Div. 770 [May, 1950]). In that case the award was on the basis of the exchange rate for blocked as distinguished from free currency and there were two existing rates; such evidence is absent here in a case in which all relevant facts and law have been stipulated to by the parties.

In *Polish Relief Comm.* v. *Banca Nationala a Rumaniei* (288 N. Y. 332) it was held that similar regulations of our country did not prevent the levy of an attachment giving the court jurisdiction to dispose of funds subject to the regulations. It clearly follows that foreign regulations are not to be given greater effect.

What the creditor here seeks is a satisfaction of a debt, concededly due, out of assets belonging to defendant which the creditor has successfully subjected to attachment in this State. Satisfaction of the debt in such manner will not necessitate interdicted transmission from Czechoslovakia of any funds to plaintiff.

It is well settled that our courts will enforce claims arising from contracts made and performable abroad where defendant's liability is to pay compensation and damages in foreign money. When such claims are sued on here, the judgment of necessity must obligate the defendant to pay damages in United States dollars and not in foreign money as our courts have no

power to render judgment in terms of foreign money and only in terms of our own money (5 Williston on Contracts [Rev. ed.], § 1410A). Hence the amount of the liability must be first determined in foreign money. That amount has been stipulated in this case and the amount so stipulated must then be converted into United States dollars for purpose of judgment at the applicable rate of exchange.

The statement under rule 234 of the Rules of Civil Practice shows that this action was begun by a warrant of attachment issued on March 18, 1948, and the summons by publication was completed in May, 1948. The stipulation of the parties with regard to the conversion of crowns into dollars at the applicable rate of exchange, was fifty crowns to the dollar from November, 1945, to the date of the trial.

At trial, plaintiff moved to amend the complaint to bring the action down to the date of plaintiff intestate's death June 12, 1949, and accordingly to increase the amount demanded. Defendant's counsel stated "We have no objection"; and defendant's brief admits "it was stipulated that a further sum of 73,836 Czechoslovakian crowns was the amount of the pension for this additional period", viz., to date of decedent's death. Pursuant to the motion granted without exception, the complaint and answer were so amended. The amended answer expressly admits paragraph 11th of the amended complaint which states the rates of exchange between United States dollars and the Czechoslovakian crown for the periods from November 1, 1942, the date of the prior judgment in favor of the employee, to November 30, 1945, and for the additional period from December 1, 1945, to June 12, 1949, date of intestate's death, so that no issue is raised by the pleadings or proof as to the applicable rate of exchange. Certain denials in the answer were obviated by the stipulation of facts at the trial and certain other issues raised were not presented.

The parties thus stipulated that the rate of exchange between the United States dollar and the Czechoslovakian crown from November 1, 1942, to November 30, 1945, was 29.225 Czechoslovakian crowns to the dollar; and from November 1, 1945, to date of trial was and is fifty Czechoslovakian crowns to the dollar. There is no dispute as to the rate of exchange involved and all plaintiff is asking for is a judgment computed at the stipulated rate for the amount due in dollars under that stipulation and the amendment of the complaint at trial. The parties also stipulated that "the total amount payable to the Plaintiff under the pension agreements amounts to 396,857 Czechoslovak

Crowns which amount had not been paid to Plaintiff or to Plaintiff's intestate * * * ". Concededly, there were due and payable 396,857 Kronen on account of the pension up to the time of the pensioner's death, which occurred during the pendency of the action. Therefore, we should award judgment to plaintiff for $7,937.14.

The bank did not perform the contract by crediting 323,021 Czechoslovakian crowns to a newly established so-called foreign blocked account in the name of appellant's intestate; that of course, would not discharge the obligation and was merely another form of acknowledgment of the debt; the stipulation expressly states that such credit was "without the consent or authorization of plaintiff's intestate". Accordingly it was in breach of the contract terms.

There remains the question as to whether we should stay execution on our judgment awaiting the issuance of a Czechoslovakian license. We see no reason why such stay should be granted. To do so would be impractical as well as unjust and would give unwarranted extraterritorial effect to foreign law and enforce it beyond its terms, and subject the parties to hazards for currency fluctuations in the indefinite future. Here, money of the debtor has been attached, the situs of which is in this jurisdiction. Czechoslovakia currency regulations can have no control over a levy on such funds, nor can Czechoslovakian laws have any control over the issuance or enforcement of process by the courts of this State. Such matters are remedial or procedural and are controlled by the law of the forum. What was said in *Deutsche Bank* v. *Humphrey* (272 U. S. 517) related to the quantum of the relief that an American court should afford and might apply to the rate of exchange that should be used in fixing the judgment in dollars. It had no application to the effect to be given to foreign currency regulations or control of the process of an American court.

No foreign law could vary the right to attachment or the extent of the relief effected by that provisional remedy. To delay execution of the judgment awaiting the issuance of a license by a foreign authority would tie up indefinitely attached funds which are not blocked funds and would give undue effect to foreign law.

Defendant has brought funds into this jurisdiction which have been attached and became subject to the claims of an American creditor. There appears to be no valid reason why we should delay the remedy of plaintiff as such creditor.

The judgment appealed from should be reversed, with costs to plaintiff-appellant, and judgment entered in plaintiff's favor with costs as prayed for in the complaint as amended on the trial pursuant to the applicable rate of exchange stipulated to in the sum of $7,937.14. No provision should be made in the judgment for any stay of execution. Settle order.

COHN, J. (dissenting in part). Defendant was concededly indebted to plaintiff in an amount of 396,857 Czechoslovak crowns. The debt arose out of a pension agreement between the plaintiff's intestate and defendant's predecessor. This action is brought to recover that indebtedness. The judgment prayed for is the dollar equivalent of the 396,857 Czechoslovak crowns based on the rate of exchange prevailing at specified times prior to the commencement of this suit.

Plaintiff's intestate was a citizen and resident of Czechoslovakia when the pension agreement was made in that country in 1938. The payments called for by the pension agreement were payable monthly in Czechoslovak crowns in Prague, Czechoslovakia. Defendant was and still is a Czechoslovakian corporation having its principal place of business in Prague.

The laws of Czechoslovakia in force when the agreement was entered into and ever since have forbidden payments by a resident of Czechoslovakia to nonresidents, or into a foreign country or foreign account without a license. Plaintiff has not secured the required license.

Because the defendant proved that it set aside the amount of the indebtedness in a foreign blocked account in the defendant bank in the name of plaintiff's intestate and thus did everything it could do in the circumstances, the trial court dismissed the plaintiff's complaint, holding that there was no breach of contract on the part of defendant in failing to pay in accordance with the pension agreement.

We think that plaintiff was entitled to judgment for the amount of pension due plaintiff's intestate. The act of the defendant in setting aside the money for plaintiff's intestate did not obliterate the indebtedness. However, a judgment dismissing the complaint in this case would extinguish the debt in that it would constitute an adjudication sufficient to defeat any subsequent suit by plaintiff in this country, in Czechoslovakia, or elsewhere. Undoubtedly the trial court overlooked the consequence of its dismissal of the complaint.

Although plaintiff's claim was governed by the laws of Czechoslovakia where the pension agreement was made and

was to be performed, plaintiff had the right to sue on the debt here. However, the fact that jurisdiction was obtained over the defendant in this action, did not confer upon plaintiff any greater rights than she would have had, were this suit brought in Czechoslovakia.

In *Holzer* v. *Deutsche Reichsbahn-Gesellschaft* (277 N. Y. 474, 478) it was declared: " The courts of this State are empowered to entertain jurisdiction of actions between citizens of foreign countries or other States of this Union based upon contracts between non-residents to be performed outside this State. (*Hutchinson* v. *Ward*, 192 N. Y. 375; *Wedemann* v. *U. S. Trust Co.*, 258 N. Y. 315, 317, 318; *Meyers* v. *Credit Lyonnais*, 259 N. Y. 399.) Under the decisions of this court and of the Supreme Court of the United States, the law of the country or State where the contract was made and was to be performed by citizens of that country or State governs. (*Salimoff & Co.* v. *Standard Oil Co.*, 262 N. Y. 220.) Within its own territory every government is supreme (*United States* v. *Belmont*, 301 U. S. 324) and our courts are not competent to review its actions."

On the trial of the present action, an attorney called as an expert witness as to the applicable law in Czechoslovakia stated that plaintiff would be entitled to a judgment in that country notwithstanding that payment of the debt is blocked, but said there could be no execution of the judgment until plaintiff obtained a license from the government.

It is a general rule, as plaintiff asserts, that the courts of this State can only grant a money judgment in legal tender. (*Petkus* v. *Lietuvos Ukio Bankas*, 123 Misc. 193, CARSWELL, J.)

The judgment must be rendered in the currency of the forum. (*Matter of United Shellac Corp.* [*Jordan, Ltd.*], 277 App. Div. 147, 152; *Metcalf Co.* v. *Mayer*, 213 App. Div. 607, 613; *Sirie* v. *Godfrey*, 196 App. Div. 529; Judiciary Law, § 27.) In *Matter of United Shellac Corp.* (*supra*) this court in an opinion by Mr. Justice VAN VOORHIS, stated the rule to be that the amount of judgment is adjusted according to the exchange rate which prevails on the day of judgment. By stipulation of the parties, the rate of exchange of United States dollars and Czechoslovakian crowns at the time of judgment is fifty crowns to the dollar. Judgment should accordingly be awarded to plaintiff in the sum of $7,937.14, which is the dollar equivalent of 396,857 Czechoslovakian crowns. Execution on the judgment should be stayed until plaintiff obtains the required license from the Czechoslovakian Government. No interest should accrue on

the judgment while the stay is effective. The outstanding warrant of attachment should likewise be continued to the extent of the judgment until payment is made. Plaintiff would thus be obtaining no more nor no less than what she could presently obtain, had suit been instituted in Czechoslovakia. A party may not gain an advantage by the accident of jurisdiction and recover here what could not be obtained in the foreign country. (*Dougherty* v. *Equitable Life Assur. Soc.*, 266 N. Y. 71.)

Accordingly, I concur with the majority to the extent of reversing the judgment, with costs and granting judgment in favor of plaintiff, but otherwise I dissent and hold as indicated in this opinion that execution on the judgment is to be stayed until plaintiff obtains the required license from the Czechoslovakian Government.

PECK, P. J., and CALLAHAN, J., concur with DORE, J.; COHN, J., dissents in part in an opinion, in which GLENNON, J., concurs.

Judgment reversed, with costs to appellant and judgment is directed to be entered in plaintiff's favor, with costs as prayed for in the complaint as amended on the trial pursuant to the applicable rate of exchange stipulated to in the sum of $7,937.14. No provision is to be made in the judgment for any stay of execution. Settle order on notice.