**Iain CUNNINGHAM, an Infant, by his parents Ronald J. CUNNINGHAM and Margaret Cunningham, and Ronald J. Cunningham and Margaret Cunningham, Plaintiffs,**

v.

**QUAKER OATS COMPANY, FISHER–PRICE DIVISION, Defendant.**

No. CIV–1973–343C.

United States District Court, W.D. New York.

May 5, 1986.

Opinion on Proposed Final Judgments July 10, 1986.

Swartz & Swartz (Alan L. Cantor, of counsel), Boston, Mass., and James M. Buckley, Buffalo, N.Y., for plaintiffs.

Phillips, Lytle, Hitchcock, Blaine & Huber (Alexander C. Cordes, of counsel), Buffalo, N.Y., for defendant.

CURTIN, Chief Judge.

In 1971, infant Iain Cunningham of Ontario, Canada ("plaintiff infant") ingested an object manufactured by defendant, and, as a result, suffered serious injury.[1] This case came to trial in June, 1981, at which

---

1. When Iain Cunningham was 13 months old, a Fisher-Price toy became lodged in his throat and cut off the supply of oxygen to his brain. As a result, Iain suffered severe brain damage, mental retardation and cerebral palsy. He will require constant care for the rest of his life.

time the jury awarded a total damage amount of $1,800,000 to Iain, $525,000 to his father, and $775,000 to his mother.[2]

In an order dated May 2, 1983, this court held that Ontario law, applicable in this case, required that the jury's verdict on the issue of Iain's pain and suffering be reduced from $500,000 to $125,000.[3] It was also held at that time that Mr. and Mrs. Cunningham ("plaintiff parents") had a right to recover the value of the services they provided to Iain, and that all plaintiffs were entitled to prejudgment interest at a rate of 7.75 percent per annum.[4]

In a subsequent order, dated August 5, 1985, this court granted plaintiffs' motion to add Iain Cunningham's mother Margaret Cunningham as a party plaintiff, and decreed that such amendment would relate back to the date of the original complaint.[5] Finally, this court declined to disturb the jury's verdict on the matter of damages for services to Iain by his parents, and denied defendant's motion for a new trial.[6]

The purpose of the present order is to decide the remaining outstanding issues in this case. It must be decided whether (1) the jury's verdict with respect to plaintiff parents' loss of past, present and future guidance, care and companionship sustainable under Ontario law; and (2) given that the verdict in this case was rendered in terms of Canadian funds, what is the proper currency conversion rate is to be applied here. I will examine these matters in greater detail below.

*Loss of Past, Present and Future Guidance, Care and Companionship*

It is well established that Section 60(2) of the Ontario Family Law Reform Act ("FLRA") allows, in pertinent part, for the recovery of:

(d) an amount to compensate for the loss of guidance, care and companionship that the claimant might reasonably have expected to receive from the injured person if the injury had not occurred.[7]

As defendant rightly points out in its papers and plaintiffs do not dispute, the FLRA was not passed until March, 1978, well after the injury to infant plaintiff. The crucial questions, therefore, in this matter concern (1) the possible retroactivity of the pertinent FLRA language, and (2) if it is found that the FLRA is not retroactive, whether defendant has preserved or waived its right to challenge the propriety of the award to plaintiff parents for loss of their son's guidance, care and companionship.

The parties' positions with respect to the above questions is as follows. Defendant first contends that the case of *Yuill v. McMullen*, 25 Ont.2d 178 (Ontario High Court of Justice 1979), *aff'd* 110 D.L.R.3d 256 (Ontario Court of Appeal 1980), states that the provisions of the FLRA are not to be applied retroactively. *See also Murray v. Murray*, 25 Ont.2d 321 (Ontario High Court of Justice, 1979). As a result, defendant contends that plaintiff parents have no post-FLRA right to recover for any loss sustained as a result of a pre-FLRA occurrence and, therefore, the awards to plaintiff parents for loss of guidance, care and companionship must be entirely excluded now. *See also* Item 184, Supplemental Affidavit of Ronald Joseph Rolls.

In opposition, plaintiffs argue that, the facts of this case show that defendant, itself, urged that the FLRA govern the instant lawsuit. In fact, plaintiffs contend that, based on their acceptance of defendant's position that the plaintiff parents were entitled to recover for guidance, care and companionship under Ontario law,

---

**2.** *See* Item 217, p. 2, for a breakdown of the jury award to each of the plaintiffs; *see also* Item 183, Exh. D.

**3.** *See* Item 193, pp. 3–15.

**4.** *Id.* at 15–23.

**5.** *See* Item 217, pp. 4–15.

**6.** *Id.* at 15–38.

**7.** *See, Family Law Reform Act,* R.S.O. 1980, c. 152. Section 79 of the FLRA expressly repealed the *Fatal Accidents Act* and section 60 of the FLRA gives a cause of action to parents for injuries sustained by their children.

plaintiffs requested this court to instruct the jury regarding these elements of damages.

Plaintiffs say that, because of the above, and because defendant failed to object to this court's instructions or submissions of special questions on the FLRA and/or failed to argue that the FLRA was not applicable to this action, defendant consented to the trial of these claims. *See* Rule 15(b) of the Federal Rules of Civil Procedure. *See also Dean Foods Co. v. Albrecht Dairy Co.*, 396 F.2d 652 (8th Cir. 1968). *Cf. Roth v. McAllister Bros., Inc.*, 316 F.2d 143 (2d Cir.1963); *National Utility Service, Inc. v. Whirlpool Corp.*, 325 F.2d 779 (2d Cir.1963), Rule 51 of the Federal Rules of Civil Procedure.[8] Therefore, plaintiff says that defendant cannot properly argue at the present time that plaintiffs have failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Cf., Weaver v. Bowers*, 657 F.2d 1356 (3rd Cir.1981), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982).

Alternatively, plaintiff states that any valid 12(b)(6) defense now raised by defendant was not timely raised pursuant to Rule 12(h)(2); that is, "at the trial on the merits." *See, e.g., Snead v. Department of Social Services*, 409 F.Supp. 995, 1000 (S.D.N.Y.1975), *judgment vacated on other grounds*, 425 U.S. 457, 96 S.Ct. 1630, 48 L.Ed.2d 88 (1976). Therefore, plaintiff contends that this defense has been waived. *Snead v. Department of Social Services, supra.*

Moreover, plaintiffs argue that even if defendant is properly allowed to argue that Ontario law does not permit the plaintiff parents to recover for loss of guidance, care and companionship, plaintiff parents recovery for this loss is adequately supported under Canadian common law, and should be allowed by this court (citing *Hasson v. Hamel*, 16 Ont.2d 517 (Essex County Court, 1977); *Fread v. Chislett*, 123 D.L. R.3d 181, 187 (Ontario High Court of Justice 1981)).[9]

Finally, plaintiffs argue that the jury's award to the plaintiff parents for the loss of guidance, care and companionship of their minor child is fair and reasonable given the circumstances involved here, and, therefore, should be allowed to stand.[10] Plaintiffs state that it is their understanding of the law in this case that there is no legal limit on the amount of damages which may properly be awarded for the loss of guidance, care and companionship

---

**8.** Note, Rule 15(b) states, in pertinent part, that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated ... as if they had been raised in the pleadings."

Rule 51 states, in pertinent part, that "no party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

*See also United States v. Heyward-Robinson Co.*, 430 F.2d 1077 (2d Cir.1970), *cert. denied*, 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971); *Spano v. N.V. Koninklijke Rotterdamsche*, 472 F.2d 33 (2d Cir.1973). *See also* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2512 (1971).

**9.** *See* Item 183, pp. 10–11. Plaintiffs also contend that the attempt by defendant to argue the common law elements for damages are different than those under the FLRA, and, therefore, not properly considered by the jury (because of the absence of instructions and special ques-

tions about different elements of damages) is prejudicial to plaintiff because, to the extent that common law damages differ from damages under the FLRA, plaintiffs did not have the opportunity to have the jury consider the common law claims of the parents, due to defendant's urging of the applicability of FLRA.

**10.** *Cf.* plaintiffs' arguments to that plaintiff infant's award for pain and suffering should not be disturbed unless there is reason to believe that it was the result of bias, prejudice, or that it is so excessive as to shock the conscience of the court. *Bevevino v. Saydjari*, 76 F.R.D. 88 (S.D. N.Y.1977), *aff'd*, 574 F.2d 676 (2d Cir.1978); *Dagnello v. Long Island R. Co.*, 289 F.2d 797 (2d Cir.1961). Further, plaintiffs argue that this court is not bound by awards which Canadian courts have awarded or approved. *Hart v. Forchelli*, 445 F.2d 1018 (2d Cir., *cert. denied*, 404 U.S. 940, 92 S.Ct. 284, 30 L.Ed.2d 254 (1971), but must determine a proper amount based on the facts of the individual case. *Mason v. Peters*, 139 D.L.R. 3d 104 (Ontario Court of Appeals, 1982).

(Item # 183, Exh. G, Affidavit of Kenneth Earle Howie; *see also* Item 136), and that the Ontario courts have interpreted the meaning of loss and guidance, care and companionship in an extremely broad fashion (*Thornborrow v. Kane*, 32 Ont.2d 740 (Ontario High Court of Justice 1981).

Defendant disagrees. It argues that the nonretroactivity of the FLRA creates a Rule 12(b)(6) defense because of plaintiffs' failure to state a claim upon which relief can be granted. *Weaver v. Bowers, supra.* Defendant also argues that this issue is not before the court for the first time by way of a post-trial motion, but rather pursuant to this court's order during trial reserving all Canadian law issues until post-trial.[11] Accordingly, defendant believes that this issue must be regarded as having been raised "at the trial," within the meaning of Rule 12(h)(2) of the Federal Rules of Civil Procedure.[12] Therefore, defendant argues that it is not estopped from raising this issue now.

Alternatively, defendant contends that, at the very least, defendant should not be precluded from raising the FLRA's nonretroactivity in response to the mother's claims, given her recent addition by the court as a party plaintiff here.[13] Defendant also argues that, wholly separate from the issue of defendant's preservation of the nonretroactivity defense in this case, that Rule 12(h)(2) cannot be properly construed to permit the creation of a claim which has no existence whatever under the applicable Canadian law,[14] especially where unfair surprise or "windfall" would result by doing so.[15]

Finally, defendant also argues that, even if it somehow waived its rights to raise the issue of FLRA's retroactivity, this court should nevertheless reduce the plaintiff parents' awards to bring this case into line with other awards by Canadian courts under the FLRA. *Mason v. Peters*, 30 Ont.2d 402 (Ontario High Court of Justice, 1980),

---

11. *See* Item 189, p. 3, which states in pertinent part:

> Since the parties have not considered [certain cases regarding defendant's Rule 12(h)(2) defense] in their briefs or arguments, in the interest of fairness, the attention of the parties is directed to these cases and to any other authorities which have considered the question of timeliness of post-trial motions such as that made by defendant in the instant case. Further, the court notes that in this case, *all damage questions under Canadian law were reserved until after trial* (emphasis added).

12. Rule 12(h)(2) provides that "[a] defense of failure to state a claim upon which relief can be granted ... may be made in any pleadings permitted or order under Rule 7(a), or by motion for judgment on the pleadings, or *at the trial* on the merits" (emphasis added). *See also* Miller, "Federal Rule 44.1 and the 'Fact' Approach to Determining Foreign Law: Death Knell for a Die-Hard Doctrine," 65 *Mich.L.Rev.* 613, 692–702 (1967) (Rule 44.1 confers broad discretion upon federal courts with respect to the proper procedure for resolving issues of foreign law).

13. According to defendant, no claim was explicitly made on plaintiff mother's behalf until after plaintiff's rebuttal case. For this reason, defendant says it could not raise possible objections to the mother's claims "at the trial" since it did not know "at the trial" that such claims

would be asserted. *See also, Holzager v. Valley Hospital*, 646 F.2d 792, 796 (2d Cir.1981).

14. *Cf., e.g., Snead v. Dep't of Social Services, supra* (wherein defendant argues plaintiff had a "well-recognized substantive law basis"), with the present case, which defendant says involves an attempt by plaintiffs to "somehow waive into existence otherwise non-existent claims") (*see* Item 191, p. 9).

Plaintiffs take issue with this description. They argue that the present dispute deals only with the retroactivity of an existent statute, not the creation of a non-existent one. *Cf., Jordan v. Weaver*, 472 F.2d 985 (7th Cir.1973), *rev'd on other grounds, Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

15. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 256, 101 S.Ct. 2748, 2754, 69 L.Ed.2d 616 (1981) (which stands, in part, for the proposition that plaintiffs have no constitutional right to a specific standard of post-trial review in this context). *See also Smith v. Atlas Off-Shore Boat Service*, 653 F.2d 1057 (5th Cir.1981); *Weaver v. Bowers, supra. See also*, in the foreign law context, *Cuba Railroad Co. v. Crosby*, 222 U.S. 473, 32 S.Ct. 132, 56 L.Ed. 274 (1912); *Northwest Orient Airlines, Inc. v. Gorter*, 254 F.2d 652 (9th Cir.1958); *First National Bank v. British Petroleum Co., Ltd.*, 324 F.Supp. 1348 (S.D.N.Y. 1971).

*aff'd*, 139 D.L.R.3d 104 (Ontario Court of Appeal, 1982).[16]

■ Given all of the above, I find defendant's arguments to be persuasive and of controlling weight here. The evidence in this case clearly shows that the FLRA is not retroactive. *Yuill v. McMullen, supra.* In *Yuill*, like the present case, the plaintiff commenced an action after the passage of the FLRA to recover for injuries sustained well before the promulgation of that legislation. In that case, after plaintiff's mother was added as a plaintiff and allowed to assert a claim for loss suffered as a result of her daughter's injuries, the Honorable Mr. Justice O'Leary of the Ontario High Court allowed an appeal and subsequently held that Section 60 of the FLRA was not retroactive so as to permit parental recovery in injury cases arising prior to that section's effective date. This decision was affirmed by the Court of Appeal in 1980. Given the close similarity of the instant case with *Yuill*, I believe the logic of *Yuill* should control here.

I also find unpersuasive at this time plaintiffs' argument that because certain aspects of the FLRA were discussed at trial, and certain instructions and questions given to the jury, defendant is now precluded from raising a retroactivity defense. As defendant states on page 4 of its Memorandum in Response to this court's February 1, 1983 Order (Item 189), this court reserved decision on all Canadian law issues until after trial in order to avoid the necessity of a new trial on the damage issue in the event that it was later found that some of the apparent restrictions under Canadian law were found not to apply. For this reason, the court submitted plaintiffs' claims to the jury without regard to possible restrictions imposed by Canadian law.

■ The *Roth* and *National Utility Service* cases, as well as other authority cited by plaintiff for their argument to the contrary are inapposite. I believe that the relevant authority on this issue makes clear that Rule 12(h)(2), properly construed, does not permit the creation of a claim which does not ordinarily exist under the applicable Canadian law. I also find without merit plaintiffs' argument that the contrary decision is mandated by Canadian "common law." Instead, I believe that the common law elements of damages are different than those damages recoverable by the parents under the Ontario FLRA. *Cf., Hasson v. Hamel, supra.* Because the FLRA prohibits the award of these damages here, I now rule that plaintiff parents' are prohibited from recovering for the loss of guidance, care and companionship of their son. Plaintiff parents' claims on this ground are, therefore, dismissed.

*The Conversion Rate*

■ With respect to the appropriate conversion rate for Canadian funds to be applied in this case, the parties are in fundamental disagreement about the proper date for the computation.[17] I believe, as was

---

**16.** As described in defendant's supplemental Affidavit of Ronald Joseph Rolls (Item 184), the largest post-FLRA award to a parent by an Ontario court for loss of a child's guidance, care and companionship was the $45,000.00 award to the mother in *Mason v. Peters, supra,* and, based on the history of awards in this area, the Ontario Court of Appeals would be expected to reduce the award in this case to a total of no more than $25,000.00 to both parents. *See Thornborrow v. Kane, supra.*

Furthermore, defendant says that because it has been held that an injured plaintiff can directly recover no more than $100,000.00 for his pain and suffering and other non-pecuniary loss, "it would be anomalous to permit parents or other relatives to recover greater sums on their derivative claims." *Andrews v. Grand & Toy Alberta Ltd.,* 83 D.L.R.3d 452 (Supreme Court of Canada 1978); *Arnold v. Teno,* 83 D.L.R.3d 609 (Supreme Court of Canada 1978); *Thorton v. Board of Trustees of School District No. 57,* [1978] 2 S.C.R. 267; *Lindal v. Lindal* [1981] 2 S.C.R. 629; *Cf.,* Item 136, *citing, Fern v. City of Peterbrough,* 25 Ont.2d 399, 104 D.L.R.3d 174 (Ontario Court of Appeal 1979).

**17.** Because the evidence during trial regarding damages was expressed in terms of Canadian dollars, the verdict rendered by the jury also was given in Canadian funds. At the time judgment was entered on June 19, 1981, the court converted the judgment into United States dollars, applying the stipulated exchange rate in effect as of that date. Plaintiffs reserved their right to contest that exchange rate and contend now that the correct exchange rate should have

stated in the Second Circuit cases of *Vishipco Line v. Chase Manhattan Bank, N.A.*, 660 F.2d 854, 865 (2d Cir.1981), *cert. denied*, 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982), and *Newmont Mines, Ltd. v. Hanover Insurance Co.*, 784 F.2d 127, 138 (2d Cir.1986), that a federal court sitting in diversity must apply the currency conversion rule employed by the courts of the state in which the action was brought.[18]

Plaintiffs now contend that both Canadian and New York law hold that the appropriate conversion date for the currency computation here is the date of the injury to infant plaintiff.[19] According to plaintiffs, the court decisions which have discussed this issue have turned on the equitable considerations of each case, and said that the "judgment-day" rule should be rejected when it will work an injustice, in favor of an application of the so-called "breach-day" rule. Further, plaintiffs urge that if a judgment-day rule is found to be applicable in this case, this judgment-day should be June 19, 1981, and not any subsequent final judgment day.

Defendant opposes plaintiffs' arguments. Although it was unable to cite any decisions dealing with conversion of foreign currency in personal injury case, defendant urges that the courts would apply the judgment day rule rather than the breach day rule if confronted with the foreign currency conversion issue in a case like the present.[20]

▮ Although this court stated in its order of May 2, 1983, that the laws of Ontario were to be applied regarding each substantive issue in this case (Item 193, page 24), the *Newmont* case makes plain that in the Second Circuit, district courts sitting in diversity in the State of New York must follow the New York breach-day rule, even in those cases where, as here, foreign law is to be applied in determining the substantive rights of the parties. Therefore, under New York law, the conversion issue has been found to be procedural rather than substantive for purposes of choice of law analysis. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Maryland Casualty Co. v. Williams*, 377 F.2d 389, 393 n. 1 (5th Cir.1967); *Parker v. Hoppe*, 257 N.Y. 333, 339–40, 178 N.E. 550 (1931); *Brill v. Chase Manhattan Bank*, 14 A.D.2d 852, 220 N.Y.S.2d 903, 904 (1st Dept. 1961); *Taubenfeld v. Taubenfeld*, 198 Misc. 108, 110, 97 N.Y.S.2d 158, 160–61 (Sup.Ct.N.Y. County 1950).

As the Second Circuit said in *Vischipco* and *Newmont*, until the New York courts choose to change their position on this question, the federal courts are bound to apply the New York breach-day rule. Giv-

been that which prevailed on the date plaintiff infant was injured, January 30, 1971.

In a recent letter to the court dated December 18, 1985, defendant has set forth the argument that the proper "judgment-day" to be looked to for conversion purposes is the final judgment-day, and not the 1981 rate (Item 220). Plaintiffs oppose this reasoning (Items 221–22).

**18.** *See, Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Hanna v. Plummer*, 380 U.S. 460, 468, 85 S.Ct. 1136, 1142, 14 L.Ed.2d 8 (1968).

**19.** For examples of the New York courts' application of the breach-day rule, *see, e.g., Dougherty v. Equitable Life Assurance Society*, 266 N.Y. 71, 193 N.E. 897 (1934); *Richard v. American Union Bank*, 241 N.Y. 163, 149 N.E. 338 (1925); *Librairie Hachette, S.A. v. Paris Book Center, Inc.*, 62 Misc.2d 873, 309 N.Y.S.2d 701, 704–05 (Sup.Ct.N.Y.Cty.1970).

Canadian courts which have adopted the breach-day rule include: *The Custodian v. Blucher*, 1927 S.C.R. 420, 3 D.L.R. 40 (Supreme Court of Canada); *Gatineau Power Company v. Crown Life Insurance Company*, 1945 S.C.R. 655, 4 D.L.R. 1 (Supreme Court of Canada).

**20.** New York court decisions which have applied the judgment-day rule include: *John S. Metcalf Co., Ltd. v. Mayer*, 213 A.D. 607, 211 N.Y.S. 53 (1st Dept. 1925); *Sirie C. Godfrey*, 196 A.D. 529, 188 N.Y.S. 52 (1st Dept. 1921).

For an example of Ontario case law in support of the breach-day rule, *see Batavia Times Publishing Co. v. Davis*, 20 Ont.2d 437 (Supreme Court of Canada, 1978); 26 Ont.2d 226 (Ontario Court of Appeal, 1980). *See also, Royal Bank of Canada v. Paletta*, 44 Ont.2d 29 (Supreme Court of Ontario, 1983).

en the above, I believe that the breach-day rule must be applied in the instant case.

In summary, plaintiff parents' claim for loss of past, present and future guidance, care and companionship is dismissed. The currency conversion rate to be applied shall be determined as of the date of infant plaintiff's injury, January 30, 1971. The parties are directed to submit proposed final judgments to this court by May 19, 1986. The court will meet with the parties the following week to discuss the final judgment in this case.

So ordered.

## OPINION ON PROPOSED FINAL JUDGMENTS

In orders of this court dated May 5 and May 19, 1986 (Items 223 and 224), the parties were directed to submit proposed final judgments in this case. Both plaintiffs and defendant have now done so (Items 225—227, memoranda in support of the respective parties' positions, with attached proposed final judgments). At this time, there are essentially three remaining disputes to be resolved in order for this court to enter its final judgment here. These can be summarized as follows.

1. Plaintiffs have calculated pre-judgment interest to June 19, 1981, and have calculated post-judgment interest from that date to entry of final judgment. Defendant has calculated pre-judgment interest to entry of final judgment, with post-judgment interest running thereafter.

2. Plaintiffs have adjusted the $125,000 award to the infant plaintiff for pain and suffering to reflect inflation after the Supreme Court of Canada's 1978 decisions in the "trilogy cases." Defendant has made its adjustment based on its reading of the Ontario Court of Appeals decision in *Fenn v. City of Peterborough*, (1979) 25 O.R. (2d) 399, 104 D.L.R. (3d) 174 (Ont. C.A.).

3. Plaintiffs have made a one-time inflationary adjustment to the pain and suffering award and have calculated pre-judgment interest on the resulting lump sum. Defendant has calculated the inflationary adjustment, as well as pre-judgment interest on the award as adjusted, on a year-by-year basis.

This court's discussion of these issues follows immediately below.

*Pre-judgment and Post-judgment Interest*

In its Memorandum of Law (Item 225), plaintiffs now argue, pursuant to this court's order of May 2, 1983 (Item 193), that they are entitled to pre-judgment interest from November 22, 1977, until June 19, 1981, and to post-judgment interest thereafter in accordance with 28 U.S.C. § 1961 (*id.* at 21–23). *See also* Item 227.

In addition, plaintiffs argue that they are entitled to post-judgment interest at the rate of 6 percent from June 20–25, 1981, and from June 25, 1981, until the date of payment at the rate of 9 percent. Plaintiffs also contend that this post-judgment interest should be compounded annually in accordance with the 1982 amendment to 28 U.S.C. § 1961(b). They say that this court may order this because the manner of calculation of interest on judgments is within the sound discretion of the district court, *see, e.g., Lodges 743 and 1746 v. United Aircraft Corp.*, 534 F.2d 422 (2d Cir.1975), *cert. denied*, 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976), and that the equities here demand it. Finally, plaintiffs argue that their proposed order is consistent with Canadian law. *Lewis v. Todd*, October 28, 1980 (Supreme Court of Canada) (Item 225, Exh. A).

In response, defendant argues, citing Rule 54(a) of the Federal Rules of Civil Procedure, that post-judgment interest does not run until entry of a final, appealable judgment. Defendant contends that pre-judgment interest ceases, and post-judgment interest commences, only on entry of the final judgment in this case. *See Caputo v. U.S. Lines Co.*, 311 F.2d 413 (2d Cir.1963), *cert. denied sub nom. Imparato Stevedoring Corp. v. United States Lines Co.*, 374 U.S. 833, 83 S.Ct. 1871, 10 L.Ed.2d 1055 (1963); *Fishman v. Estate of Wirtz*, 609 F.Supp. 982 (N.D.Ill.1985); *Harris v. Goldblatt Brothers, Inc.*, 659 F.2d 784, 786 (7th Cir.1981).

Defendant argues that, as in the cases cited above, the 1981 judgment in this case "was rendered with respect to only part of the relief sought by the plaintiffs," and that it did not determine plaintiffs' claim for pre-judgment interest, as well as the "cap" on pain and suffering, the motion to add the mother as a party plaintiff, and the applicable exchange rate at the time the 1981 judgment was entered. Moreover, defendant argues that the parties acknowledged the non-final character of the 1981 judgment on three occasions when they stipulated that each of this court's subsequent orders was "an interlocutory order which is not appealable at this time, pending entry of a final order and amended judgment." *See* Orders of May 31, 1983; August 30, 1985; and May 19, 1986 (Items 198, 218, and 224).

Finally, defendant argues that it is fair to limit an award of post-judgment interest in this case to the period after entry of this court's final judgment because defendant could not know the extent of its monetary obligation to plaintiffs until entry of the final judgment.

In their Supplemental Memorandum (Item 227), plaintiffs take issue with defendant's version of the law in this case. First, they contend that it has been clear from the time of the original judgment that both the court and the parties expected that post-judgment interest would run from June 19, 1981. *See e.g.*, Item 193, pp. 22–23. Second, plaintiffs argue that in every analagous situation in which federal courts have ruled on issues similar to those presented in the instant case, courts have concluded that post-judgment interest should run from the entry of the initial judgment upon the jury verdict rather than from a subsequent judgment which affirmed or modified the original verdict. *See e.g., Brooks v. United States,* 757 F.2d 734 (5th Cir.1985); *Copper Liquor, Inc. v. Adolph Coors Co.,* 701 F.2d 542, 545 (5th Cir.1983); *Perkins v. Standard Oil Co. of California,* 487 F.2d 672, 676 (9th Cir. 1973). Plaintiffs claim that this rule applies even where the appeal or post-trial motions result in a reduction of a portion of

the verdict. *Ohio-Sealy Mattress Manufacturing Co. v. Sealy, Inc.,* 585 F.2d 821 (7th Cir.), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1978); *Copper Liquor, Inc. v. Adolph Coors Co., supra.*

Plaintiffs point out that four of the five elements of damages to which post-judgment must be added have been affirmed during the course of the court's post-trial rulings. They note that the only modification of the jury verdict with respect to an element of damages to which post-judgment interest must be added was the reduction of the verdict in favor of plaintiff Iain Cunningham for pain and suffering and loss of amenities of life from $500,000.00 to $125,000.00 plus inflation (Item 193). Plaintiffs say that, with respect to this adjustment, they are entitled to post-judgment interest only on the reduced award. *Cf., Lowe v. General Motors Corp.,* 527 F.Supp. 54 (N.D.Ala.1981). Plaintiffs contend that the cases cited by defendant to the contrary are inapposite. Item 227, pp. 5–7.

Finally, plaintiffs say that defendant's argument that the June 19, 1981, was not an appealable judgment is incorrect. Plaintiffs say that the appeals period was, in fact, merely stayed pursuant to the provisions of Rule 4(a)(4) of the Federal Rules of Appellate Procedure so that various post-trial motions could be resolved.

■ In light of all of the above arguments, I find as follows. First, contrary to the statements of attorneys in this case, I believe that there exists no case law which squarely deals with the issues presented in this case. Indeed, I believe that the long and complicated procedural history of this litigation makes it, thankfully, quite unique. However, in light of the equitable considerations involved, I believe that plaintiffs' arguments must now prevail.

I have carefully reviewed all of the case law cited in the parties' briefs. While I acknowledge, given the number of issues taken up during the post-trial motions in this case, that defendant could not have been completely aware of the full extent of

its liability to plaintiffs at the time of the original judgment, I believe that defendant was sufficiently put on notice of its liability in June of 1981 to warrant the accumulation of post-judgment interest since that time. *Cf., Fishman v. Estate of Wirtz, supra.*

As plaintiffs point out, four of the five elements to which post-judgment interest must be added were, in fact, affirmed during post-trial motions. In light of this, I believe it is just and fair to award plaintiffs post-judgment interest from 1981 because defendant had possession and control of the funds during the pendency of these motions. *See e.g., Brooks v. United States, supra* at 741 n. 8. Therefore, I now find that the original June 19, 1981, judgment (Item 159) is the relevant judgment date for purposes of beginning the accrual of post-judgment interest. I also find, with respect to this court's reduction of plaintiff Iain Cunningham's pain and suffering award, that the post-judgment interest must also be calculated to have begun accruing from June 19, 1981, to the extent that the original judgment was ultimately permitted to stand. *Cf., Lowe v. General Motors Corp., supra* at 57.

This post-judgment interest shall be calculated to have begun running on June 20, 1981, and until June 25, 1981, the applicable rate shall be 6 percent. Thereafter, in light of the equitable considerations involved in this case and the 1981 amendment to C.P. L.R. § 5004, I believe that the post-judgment interest must be calculated at the rate of 9 percent. I decline, however, to now order that this interest be compounded annually. *Cf.,* 28 U.S.C. § 1961(b) (amended in 1982). *See also, Litton Systems v. American Telephone and Telegraph,* 746 F.2d 168 (2d Cir.1984). *Inflation Adjustment Based on the "Trilogy Cases"*

■ Plaintiffs also argue that the inflation rate adjustment to be made with respect to the pain and suffering award in this case should be made as of January 19, 1978, the date of the so-called "trilogy decisions."

Defendant disagrees. It argues that this adjustment should be made for the period of May 8, 1979, until June 1981. *Fenn v. City of Peterborough, supra.* According to defendant, the pain and suffering award in the *Fenn* case *included* an inflationary adjustment for the period January 1978 to May, 1979. 104 D.L.R. (3d) at 226. Therefore, it says that to adjust the pain and suffering award in the instant case to reflect inflation for that period would, in effect, provide twice the proper adjustment. I find defendant's argument unpersuasive. As was stated in this court's May 2, 1983, order (Item 193):

In fairness to the plaintiff, therefore, and recognizing that the facts of the case could indeed be considered exceptional, the court finds that Iain is entitled to the highest amount of damages awarded by a Canadian court, following the Supreme Court's trilogy decisions. This figure is $125,000.00 awarded to the plaintiff in *Fenn v. City of Peterborough, supra.* Therefore, the infant's award of *damages for pain and suffering and loss of amenities* shall be reduced by the sum of $375,000.00.

*Id.* at 14 (emphasis added).

Given the above, it is clear that this court's 1983 order adjusting plaintiff Cunningham's pain and suffering award down to $125,000.00 was not intended to include an inflationary adjustment. Instead, the $125,000.00 award was intended by this court to compensate this plaintiff solely for pain, suffering, and loss of amenities. Plaintiff is now entitled to an inflationary adjustment on this whole amount as of January 19, 1978, the date of the so-called "trilogy cases."

*Computation of the Inflation Adjustment and Pre-judgment Interest on Pain and Suffering*

Finally, in the calculation sheet attached to their proposed final judgment, plaintiffs 1) add together the inflation rates for each year covering the period of the adjustment (which they allege begin in January of 1978); 2) multiply the resulting aggregate

rate (33.6 percent) by the $125,000 award increased by 33.6 percent.

Defendant argues that this is the wrong approach and says that the proper method is to calculate the inflationary adjustment, and the pre-judgment interest on the award as adjusted, separately for each year from 1979 (when *Fenn* was decided) to 1981, when the jury returned its verdict in this case.

On the date of oral argument, plaintiffs' attorney said that he had no strong quarrel with defendant's proposed "year-by-year" method of calculation. However, he argued that this adjustment should properly be calculated as of the date of the trilogy decisions, January 19, 1978. In light of the above discussions, I believe that this is correct and proper.

To repeat and reiterate: This court finds that, where applicable, plaintiffs are entitled to pre-judgment interest from November 25, 1977, in accordance with the order of May 2, 1983 (Item 193), at the rate of 7.75 percent. In addition, plaintiffs are entitled to post-judgment interest on certain aspects of the original judgment which, after post-trial motions, were ultimately allowed by this court to stand. This interest shall be calculated as having begin running on June 19, 1981, at the rate of 6 percent during the period of June 20—25, 1981. Thereafter, plaintiffs are entitled to post-judgment interest at the rate of 9 percent. The post-judgment interest on plaintiff Iain Cunningham's reduced pain and suffering award shall also accrue as of June 19, 1981, at the rates described above.

This court also finds that plaintiff Iain Cunningham is entitled to an inflationary adjustment on the full $125,000.00 award for pain and suffering and loss of amenities. This adjustment shall be made as of January 19, 1978. Finally, plaintiffs are entitled to a calculation of this inflationary adjustment, as well as pre-judgment interest on the award as adjusted, on a year-by-year basis.

Plaintiffs shall submit to this court by July 17, 1986, a second proposed final judgment in this case which reflects the find-ings in this order. Thereafter, defendant will be given until July 24, 1986, to respond as it deems appropriate.

So ordered.